UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JYOTSANA JAYESH KUMAR
PANCHAL,

           Plaintiff,

v.                                                              CASE NO. 6:17-cv-982-Orl-18JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

           Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits.  In a decision dated July 8, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability within the meaning of the Social Security Act from February 14, 2013, the alleged disability onset date, through the date of decision.  (Tr. 34–42.)  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

### I.    Issues on Appeal

Plaintiff raises the following issues on appeal:

1. [Whether] the ALJ properly credited Dr. Qureshi's opinion by accepting the exertional limitations Dr. Qureshi outlined on April 19, 2013, but by failing to credit the Plaintiff's manipulative limitations Dr. Qureshi described in the same opinion given that Dr. Qureshi listed fibromyalgia, hypertension, and hyperthyroidism as the Plaintiff's primary diagnoses; given that the Plaintiff's difficulty using arms and hands are caused by fibromyalgia; and given that the ALJ rejected manipulative limitations because there were no objective signs including swelling/synovitis or cervical nerve compression even though fibromyalgia is largely entirely subjective impairment and is evaluated based on subjective evidence.

2. [Whether] the ALJ's decision is supported by substantial evidence given that he failed to evaluate or reference in his decision the opinions of Dr. Perez-Perez and Earlene Joseph, P.A., who outlined significant limitations, including no lifting over 10 pounds, sitting no more than 15 minutes per hour, and other limitations.

3. Whether the ALJ properly considered the side effects of the Plaintiff's medications and other non-exertional impairments given that the record documents side effects and non-exertional impairments of sleepiness, hair loss, dizziness, blurred vision, confusion, sweating, drowsiness, impaired ability to drive, nervousness, headaches, and weakness; given that the evidence indicates that these problems limit, among other things, the Plaintiff's ability to lift, sit, stand and drive.

(Doc. 22 at 1.)

## II.    Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease, fibromyalgia, thyroid disorder, hypertension, and obesity."[2]  (Tr. 36.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 36.)  Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she can stand for a total of 3 hours in an 8 hour workday

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 34–36.)

and walk for a total of 1 hour in an 8 hour workday." (Tr. 36.) At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. 40.) However, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 41–42.) Therefore, Plaintiff was not disabled. (Tr. 42.)

## IV.    Analysis

### A.    Dr. Imtiaz Qureshi

Plaintiff first argues that the ALJ erred in failing to properly credit the opinions of her treating primary care physician, Dr. Imtiaz Qureshi. (Doc. 22 at 9–13.) Specifically, she argues that the ALJ failed to include Dr. Qureshi's manipulative limitations in the RFC despite Plaintiff's severe impairment of fibromyalgia, the hallmark of which is a lack of objective evidence. (*Id.* at 11–13.)

To discount the opinions of a treating doctor, the ALJ is required to provide "good cause." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2014). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41. The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

In addition, on several occasions the Eleventh Circuit has cautioned against overemphasizing a lack of objective findings to discount the severity of complaints stemming from fibromyalgia.  *See, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (Fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms.") (internal quotation marks and citation omitted); *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) ("Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby. . . . [T]he nature of fibromyalgia itself renders . . . over-emphasis upon objective findings inappropriate.") (internal quotation marks and citation omitted).[3]

However, the Eleventh Circuit has also recognized that a mere diagnosis does not prove disability.  *See Moore*, 405 F.3d at 1213 ("[T]he mere existence of [Plaintiff's] impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work.") (quotations and citation omitted).

---

[3] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

The undersigned recommends that the ALJ articulated good cause, supported by substantial evidence, for discounting a portion of the opinions of Dr. Qureshi, and that the ALJ did not overemphasize a lack of objective findings.  In addressing the April 2013 opinions of Dr. Qureshi, the ALJ stated in part:

> In terms of the claimant's alleged inability to tolerate prolonged standing and walking, in April 2013, Imtiaz Qureshi, MD, a treating physician, twice opined she could stand for a total of 1 hour in an 8 hour workday and walk for a total of 3 hours in an 8 hour workday (Exhibit 2F/7 and 18).  The undersigned gives this aspect of Dr. Qureshi's opinions great weight because other evidence supports it.
>
> . . .
>
> Dr. Qureshi's April 2013 medical source statements limit the claimant to lifting 10 pounds frequently and 20 pounds occasionally (Exhibit 2F/7 and 18).  These aspects of Dr. Qureshi's April 2013 opinions are given significant weight because they are consistent with objective findings of intermittent myalgias and increased bleeding with exertion.  That said, no weight is given to the portion of Dr. Qureshi's April 2013 opinions in which he opines that the claimant should never reach above the shoulder, at the waist, or below the shoulder with either extremity (Exhibit 2F/7 and 18).  The claimant complained of shoulder pain of three days duration on one occasion in October 2013, and examination was positive for tenderness in that area (Exhibit 7F/27).  However, the claimant's fibromyalgia symptoms have improved since then (Exhibit 7F/2-15), and there is no evidence of any other shoulder or neck impairment that would justify these limitations.  Nerve conduction studies of the claimant's upper extremities done around January 2013 were negative for median nerve entrapment neuropathy while other tests revealed a negative rheumatoid factor and a negative ANA.  X-ray of the hands and wrists were unremarkable (Exhibit 1F/2).  Examination on January 17, 2013 revealed no swelling

> or synovitis of the wrists or hand joints and the claimant's
> shoulders had a full range of flexion, abduction and
> rotation (Exhibit 1F/3). More recent examination findings
> also indicate no shoulder pain, whether from fibromyalgia
> or arthritis (Exhibit 7F/2-15).

(Tr. 37–39.)

In addition, the ALJ addressed numerous other medical source statements

completed by Dr. Qureshi both before and after April 2013, noting that they were

often inconsistent:

> Turning back to the opinion evidence, Dr. Qureshi has
> completed numerous medical source statements since
> 2013. The claimant was on leave from Disney for quite
> some time before she quit working, and Dr. Qureshi
> completed most of these statements for Disney or an
> insurance company, in support of the claimant's inability
> to work. His opinions in these statements often
> contradict each other. For example, on 2/27/13, he
> stated that the claimant would be unable to work from
> 2/21/13-3/3/13 but had no restrictions (Exhibit 2F/6).
> This is given no weight because it addresses a short term
> work absence versus whether or not the claimant has
> permanent functional limitations. On April 2, 2013,
> apparently for insurance purposes, Dr. Qureshi opined
> that the claimant could sit for 6 total hours in a day, stand
> for 3 total hours in a day, and walk for 1 total hour, and
> that she could lift up to 10 pounds with no restrictions and
> occasionally could lift 20 pounds, though she could never
> use her arms to reach in any direction. These limitations
> were expected to last for a year (Exhibit 2F/18). On April
> 19, 2013, Dr. Qureshi reiterated this opinion but
> estimated the limitations would last for two years (Exhibit
> 2F/7). For reasons explained above, apart from the
> reaching limitations, these opinions are given significant
> weight, though not great weight because Dr. Qureshi
> appears unsure as to the duration of the assigned
> limitations and later offers different opinions.

> In November 2013, Dr. Qureshi wrote a general

statement explaining the claimant's chronic pain was exacerbated when she lifted over 10 pounds (Exhibit 7F/106). In December 2013, Dr. Qureshi (or his designee) completed a form for employer accommodations in which he opined the claimant could not lift over 10 pounds, sit for more than 15 minutes per hour, or stand or walk for more than 50 minutes per hour (Exhibit 7F/67). He further opined the claimant could not push or lift heavy items, sit long or stand long (Exhibit 7F/63).

In progress notes from March 2014, Dr. Qureshi notes the claimant is "unable to work at this time" and is requesting disability papers to be completed (Exhibit 5F/2). He then completed another statement wherein he opined the claimant could sit, stand and walk for a total of 15 minutes, respectively, at a time. He also opined she could not even lift 10 pounds and reiterated his prohibition on reaching, though he indicated she had no limitations on fingering and handling. This time, he estimated the limitations were lifelong (Exhibit 7F/101).

Finally, in June 2015, Dr. Qureshi completed a detailed residual functional capacity questionnaire in which he opined that the claimant could sit, stand and walk for less than 2 hours each in an 8 hour workday, lift less than 10 pounds, would need to shift positions at will and would have to rest for 30 minutes before returning to work. He also assigned restrictions on turning the neck and with reaching, handling, fingering and feeling, and opined she would be absent from work more than 4 days per month (Exhibit 6F).

For the reasons discussed above, the undersigned gives most aspects of Dr. Qureshi's April 2013 opinions significant weight, but gives very limited weight to the remainder of his opinions. These later opinions contradict the earlier ones, and illustrate a decline in the claimant's condition at odds with her testimony of no change in her condition since 2013 and with objective evidence of symptom improvement, not worsening (Testimony and Exhibit 7F/2-15). These opinions are also incongruent with the lack of any evidence of hand

> swelling, synovitis or nerve compromise.  There is no
> new evidence of hand or neck symptoms to support the
> manipulative limitations assigned (Exhibit 5F and 7F).
>
> . . .
>
> In sum, the above residual functional capacity
> assessment is supported by the objective medical
> evidence, the claimant's admission of no symptom
> worsening, evidence of the claimant's activities and
> evidence of the claimant's good response to treatment.

(Tr. 39–40.)

Thus, in discounting the opinions of Dr. Qureshi, the ALJ relied not only on a lack of objective findings, but also on Plaintiff's improvement in fibromyalgia symptoms and inconsistencies in Dr. Qureshi's opinions.  These opinions reflected a worsening of Plaintiff's condition, when in fact the treatment records showed improvement.  In addition, Plaintiff herself testified that her condition had not changed over time.  (Tr. 67.)  The ALJ's finding that Plaintiff's fibromyalgia symptoms were improving is supported by substantial evidence.  For example, the ALJ stated:

> The claimant has diffuse muscle tenderness associated
> with fibromyalgia, though there is no evidence of swelling
> or synovitis (Exhibits 1F/2 and 5 and 2F/9).  Progress
> notes from her rheumatologist and primary care
> physician reveal her symptoms of diffuse muscle
> tenderness wax and wane, though they improved
> beginning in April 2014, after the claimant started taking
> Lyrica consistently.  Musculoskeletal examination
> findings were normal in 4/14, 8/14, 9/14, 2/15, and 6/15
> (Exhibits 1F, 3F, 4F/10 and 7F/2-15).

(Tr. 38.)

The treatment records are consistent with the ALJ's summary of them.  For example, on April 2, 2014, Plaintiff denied "any joint pain, swelling or any bone pain."  (Tr. 393.)  On August 27, 2014, Plaintiff stated that she had "been feeling better recently."  (Tr. 387.)  Her musculoskeletal examination showed "no swelling or deformity, full range of motion, symmetrical development."  (Tr. 387.)  Her neurologic exam showed that she was "alert and oriented, motor strength normal upper and lower extremities, sensory exam intact, adequate mood and affect."  (Tr. 387.)  She also denied painful or swollen joints.  (Tr. 388.)  Her examination was the same on September 16, 2014, and her fibromyalgia was noted as "stable."  (Tr. 385–86.) Her examination was also the same on February 3, 2015, at which time she was noted to be "doing well, no complains [sic]."  (Tr. 382.)  Her examination was the same on June 3, 2015, although her complaints had increased, and it was noted that she was "here for disability papers."  (Tr. 380.)

Also pertinent to the ALJ's analysis of Plaintiff's fibromyalgia was his discount of Plaintiff's credibility, which the undersigned recommends is also supported by substantial evidence.  In addressing Plaintiff's credibility, the ALJ stated in part:

> The undersigned is persuaded that the claimant must limit her standing and walking, and that she has flares of increased pain.  However, the evidence as a whole indicates the claimant is able to function to a greater extent than she alleges.  Some notable inconsistencies erode the claimant's overall credibility as to the marked limitations she described at the hearing and in function reports.  For instance, the claimant testified that she always uses a cane, but in December 2013, her

> physician noted she ambulated normally without an assistive device (Exhibit 4F/10), and another treating physician recently indicated she did not need a cane or other assistive device to walk (Exhibit 6F/4).  In a Function Report the claimant completed in December 2013, the claimant stated that she needed reminders to take her medication, that she could not do any yard work, that she needed help to lift the laundry basket, and that she did not prepare any meals because she could not stand at the stove (Exhibit 10E/3).  In the same month, the claimant told her doctor that she needed no assistance with housekeeping, no assistance with cooking, and no assistance with yard work (Exhibit 4F/10).  The claimant testified that on bad days, she takes her medication and goes to sleep; in her Pain Report, she stated pain medication gave her 6 hours of pain relief, and that she could cook sometimes and do laundry (Exhibit 4E).

(Tr. 39.)

Again, the record supports the ALJ's analysis.  For example, Plaintiff testified at the hearing that she always used a cane.  (Tr. 65.)  However, on December 31, 2013 and January 28, 2014, it was noted that Plaintiff "ambulates normally without assistive device."  (Tr. 350, 356.)  On June 3, 2015, Dr. Qureshi opined that Plaintiff did not need a cane while engaging in occasional standing/walking.  (Tr. 377.)  Similarly, the ALJ's finding that Plaintiff made other inconsistent statements about her functioning is supported by the record.  (Tr. 64, 211, 236, 356.)  Thus, the ALJ provided adequate reasons, supported by substantial evidence, for discounting Plaintiff's credibility.

Finally, in discounting Dr. Qureshi's opinion regarding Plaintiff's reaching limitations, it appears that the ALJ relied on the lack of objective findings, as

reflected for example in nerve conduction studies and x-rays, to exclude causes other than fibromyalgia, rather than to address the fibromyalgia itself, which the ALJ noted was improved.  (Tr. 38.)  Regardless, even if the ALJ relied partially on a lack of objective findings to discount the opinions of Dr. Qureshi regarding fibromyalgia, the ALJ articulated multiple other reasons for doing so.  Therefore, the undersigned recommends that the ALJ did not overemphasize the lack of objective findings in analyzing Plaintiff's fibromyalgia, and otherwise provided good cause, supported by substantial evidence, for discounting the opinions of Dr. Qureshi.

## B.  Dr. Ruben Perez-Perez and P.A. Earlene Joseph

Plaintiff next argues that the ALJ failed to consider the opinions of Dr. Perez-Perez and P.A. Joseph.  (Doc. 22 at 13–14.)  Both of these health care providers were with the same practice as Dr. Qureshi, Family & Internal Medicine Center.  (Tr. 444, 485.)  The undersigned recommends that the ALJ did not err because he did consider these opinions.  Moreover, any possible error is harmless.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security cases).

"In assessing medical evidence, an ALJ is required to state with particularity the weight given to the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  The December 11, 2013 opinions of Earlene Joseph, P.A., were addressed by the ALJ in connection with his consideration of the opinions of Dr. Qureshi: "In December 2013, Dr. Qureshi

12

(or his designee) completed a form for employer accommodations in which he opined the claimant could not lift over 10 pounds, sit for more than 15 minutes per hour, or stand or walk for more than 50 minutes per hour." (Tr. 39–40.) Thus, this opinion was addressed, and for the reasons previously discussed, the ALJ articulated good cause, supported by substantial evidence, for discounting this opinion.

Similarly, although the ALJ did not specifically mention the May 3, 2013 opinions of Dr. Ruben Perez-Perez, those opinions are identical to the December 2013 opinions that the ALJ attributed to Dr. Qureshi by way of his designee, P.A. Joseph. (Tr. 445, 485.) Having discounted the December 2013 opinions, it is apparent that the ALJ would have similarly discounted the identical May 2013 opinions, even assuming he did not explicitly do so. Moreover, as Defendant argues, it is not clear from the record that Dr. Perez-Perez ever even treated Plaintiff. (Doc. 23 at 8–9.) Thus, the undersigned recommends that the ALJ did not err, but if he did, any error is harmless.

### C.   Side Effects

Finally, Plaintiff argues that the ALJ failed to properly consider the side effects of her medications. (Doc. 22 at 14–16.) The undersigned recommends that this argument be rejected because the ALJ properly considered Plaintiff's allegations of side effects. The ALJ noted:

> Turning to the claimant's allegations of dizziness and heavy bleeding on prolonged standing, the evidence indicates the claimant has had such episodes. The

claimant reported dizziness when she was on Savella therapy for fibromyalgia, and she was on this medication through December 2013, when Dr. Qureshi changed it to Lyrica (Exhibits 3F/3 and 7F/23). The claimant reported drowsiness on Lyrica, but he advised her to lower the amount she was taking to avoid that side effect (Exhibit 7F/23). She also has high blood pressure and anemia (Exhibits 7F/2 and 4F/3). As for heavy bleeding on prolonged standing and walking, this problem seemed to be resolved as of September 2013 (Exhibit 3F/3), but in December 2013 the claimant tried to increase her walking for more exercise, and the problem recurred (Exhibit 7F/21). The undersigned is persuaded that the claimant has episodes of dizziness and/or fatigue as well as increased bleeding if she is on her feet too long. These problems, in conjunction with her other symptoms, support Dr. Qureshi's standing and walking limitations.

(Tr. 38.)

Plaintiff contends that her dizziness, fatigue, and heavy bleeding occurred not just when she was on her feet too long, as the ALJ recognized, but also when she was sitting too long or lifting more than 3 or 4 pounds. (Doc. 22 at 16.) However, Plaintiff cites only her own statements and complaints to support this contention. (*Id.*) (*See also* Tr. 64, 341–42, 399, 412.) As previously discussed, the ALJ validly discounted Plaintiff's credibility. Therefore, he did not have to accept Plaintiff's statements regarding the severity of her side effects from medications. For these reasons, the undersigned recommends that the ALJ adequately considered side effects from Plaintiff's medications.

## V.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not

whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The Commissioner's decision be **AFFIRMED**.

2.      The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on May 2, 2018.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable G. Kendall Sharp
Senior United States District Judge

Counsel of Record